HENRY WEIRS, Appellant, v. JONES COUNTY, Appellee.

Negligence: DEFECTIVE BRIDGE: CONTRIBUTORY NEGLIGENCE: INSTRUC-
TIONS TO JURY.   Where signboards bearing the inscription, "bridge
unsafe," were erected at the ends of a defective bridge, and wires
were extended across each end thereof, about the height of the breast
of a horse, held, that if said signboards were placed in a conspicuous
place, and were of such construction as would give warning to a

person of ordinary care of the unsafe condition of the bridge, a person who attempted to cross said bridge would be chargeable with contributory negligence, though he could not read the English language, in which said inscription appeared.

*Appeal from Jones District Court.*—HON. JAMES D. GIFFEN, Judge.

TUESDAY, OCTOBER 25, 1892.

THE plaintiff seeks by this action to recover damages for the killing of two horses and the destruction of a wagon by the breaking down of a bridge which was built and maintained by the county. There was a trial by jury, and a verdict and judgment for the defendant. The plaintiff appeals.—*Affirmed.*

*Sheean & McCarn*, for appellant.

*F. O. Ellison*, for appellee.

ROTHROCK, J.—This is the second appeal in this case. See 80 Iowa, 351. There was a verdict and judgment for the plaintiff upon the first trial. The judgment was reversed upon what was thought by this court to be error in certain instructions given by the court to the jury. The questions there determined are not involved in this appeal. The evidence on both trials was substantially the same, and presents the following state of facts, which we now copy from the opinion on the former appeal:

"It is conceded that the bridge in question was a county bridge, and that it was known to the board of supervisors of the defendant to be in an unsafe condition prior to the time of its falling. About the fourth day of September, 1888, the board caused it to be examined and condemned. By authority and direction of the board, signboards bearing in large letters the words "Bridge unsafe," were prepared, and on the

fifth day of September, 1888, one was nailed up at each end of the bridge, in a conspicuous place. In addition, at one end of the bridge, two wires were stretched across the bridge at about the height of the breast of a horse, and securely fastened to the sides by means of staples, and a wire was stretched and fastened in a similar manner at the other end of the bridge. The bridge was in an isolated place, and was used but little. It was about three hundred feet in length, and eighteen or twenty feet above the water of the stream. On the ninth day of September, 1888, the plaintiff crossed the bridge in the morning without accident. The signs were then on the bridge, and the wires were there, but loosed at one end and thrown to one side, in such a manner as not to form any obstruction to the crossing of the bridge. The plaintiff claims that he could not read English, and that he did not see the signs nor the wires, and did not know the condition of the bridge, not having been to it for a year before. On his return in the evening, the bridge fell while he was on it with his team, and, as a result, his horses were killed and the wagon was damaged.

The court on the last trial instructed the jury as follows: "If the notices, or the notices and wires together, were sufficient to notify a person exercising ordinary and reasonable care, of the unsafe condition of said bridge, or that it was unsafe, then it would make no difference whether the plaintiff could read said notices or not, or whether he could read English or not. You are instructed that, if you find from the evidence that the signboards were placed in a conspicuous place at each end of the bridge, and were of such construction as would give warning to a person of ordinary care, about to enter upon the bridge, of its unsafe condition, and if you find from the evidence that such signboards were so maintained up to, and at, the time plaintiff entered upon the bridge, then the

fact that plaintiff was unable to read the English language, if you shall so find, would be no excuse for him; and if, under all the circumstances, you shall believe from the evidence that a person who was capable of reading the English language, and in the exercise of ordinary care and prudence, would have been warned of the unsafe condition of the bridge, then the plaintiff would be guilty of contributory negligence in this case, and cannot recover." The giving of these instructions is the subject of complaint by the plaintiff.

There is no real difference between these two paragraphs of the charge. They directed the jury that if the signboards were placed in a conspicuous place at each end of the bridge, and were of such construction as would give warning of the unsafe condition of the bridge, then the fact that the plaintiff was unable to read the English language was no excuse for him in making the attempt to cross the bridge, and he would be chargeable with contributory negligence.

The appellant's counsel places much stress upon the fact that the court in said instructions directed the jury that the plaintiff, under the facts stated, would be chargeable with contributory negligence. It is not very material whether the court directed the jury that no recovery could be had, because, under the facts stated, the board of supervisors was not chargeable with negligence, or the defendant guilty of contributory negligence. The instructions are based upon the thought that the signboards and the wires were sufficient to notify persons exercising ordinary care that the bridge was unsafe. There is no varying standard of care under a given state of facts in a case like this, so as to warn the blind or those who are unable to read. If the jury found that the signboards and barriers made by the wires were sufficient to acquit

the county of negligence, that was the end of the case. The evidence shows beyond all question that, at the very time the plaintiff went upon the bridge, the sign-boards were in a conspicuous places at each end of the bridge, and that the plaintiff did not even see them. If he failed to see the signboards, and could read, of course, he could not recover, and the fact that he could not read the English language should not require that the board of supervisors should put up impassable and immovable barriers in order to protect the county from suits for damages, or to post notices or signboards of danger in all languages, so that people of every tongue might be warned of the danger. The laws of this country and the proceedings of the courts are required to be in the English language. The proceedings of the boards of supervisors, and notices ordered by them, are in the same language. The jury found that the precautions taken by the board to protect travelers were reasonably sufficient to notify persons exercising ordinary and reasonable care that the bridge was unsafe. The plaintiff cannot be allowed to claim that some standard of care shall be applied to him which is not applicable to persons in general.

The judgment of the district court is AFFIRMED.